## REAL SILK HOSIERY MILLS, Inc., v. CITY OF PORTLAND et al.

### (Circuit Court of Appeals, Ninth Circuit. April 21, 1924.)

### No. 4176.

1. **Municipal corporations ⬤=63(1)—Declarations of ordinance as to emergency presumed true.**

   Declarations of ordinance as to conditions and existence of emergencies are presumed to be true.

2. **Commerce ⬤=67—License tax imposed on solicitors representing manufacturer in other state held not burden on interstate commerce.**

   License tax imposed by an ordinance on solicitors within the city, who take orders for hosiery with small down payment, retained by solicitors as compensation for procuring the orders, and who turn orders over to sales manager, who forwards orders to manufacturer in other state, from which the hosiery is shipped to the purchaser, *held* not a burden on interstate commerce.

3. **Licenses ⬤=7(2)—Ordinance imposing license tax on solicitors held based on a reasonable classification.**

   An ordinance imposing a license tax on solicitors engaged in soliciting orders for goods, wares, or merchandise, who demand, accept, and receive payment, or take money in advance of final delivery, *held* based on reasonable classification.

4. **Licenses ⬤=7(1)—License tax on solicitors held within police power.**

   An ordinance imposing a license tax on solicitors who receive money in advance of final delivery, and requiring them to execute a bond, adopted on declaration by the ordinance as to existence of emergency created by fraud being perpetrated on the public by some solicitors, *held* within the police power of the city.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit for the Real Silk Hosiery Mills, Incorporated, against the City of Portland and others, to enjoin defendants from enforcing as against plaintiff's solicitors Ordinance No. 40468 of the City of Portland, as amended by Ordinance No. 42886, defining solicitors and requiring them to obtain a license and give a bond. Decree for defendants (294 Fed. 587), and plaintiff appeals. Affirmed.

Dolph, Mallory, Simon & Gearin and Edgar Freed, all of Portland, Or., and Bamberger & Feibleman, of Indianapolis, Ind., for appellant.

Frank 'S. Grant and Robert A. Imlay, both of Portland, Or., for appellees.

Before HUNT, MORROW, and RUDKIN, Circuit Judges.

MORROW, Circuit Judge. Plaintiff brought suit in the lower court to enjoin defendant from enforcing, as against the plaintiff's solicitors, Ordinance No. 40468 of the city of Portland, as amended by Ordinance No. 42886, defining solicitors and requiring them to obtain a license and give a bond. Decree dismissing plaintiff's bill of complaint. Plaintiff appeals to this court.

It appears from the bill of complaint that Ordinance No. 40468, passed by the city council on December 21, 1921, is the general license

ordinance of the city of Portland, relating to the regulation and licensing of numerous businesses and occupations. Ordinance No. 42886, passed on May 16, 1923, is an amendment added to Ordinance No. 40468. The amendment is known as article XLV½. In section 1 a solicitor is defined as:

"Any person who goes from house to house, or from place to place in the city of Portland, selling or taking orders for, or offering to sell or take orders for goods, wares or merchandise or any article for future delivery, or for services to be performed in the future, or for the making, manufacturing or repairing of any article or thing whatsoever for future delivery, provided, however, that this article shall apply only to solicitors who demand, accept or receive payment or deposit of money in advance of final delivery."

In section 2 it is provided that:

"It shall be unlawful for any person to act as a solicitor within the meaning and application of this article without first securing a license from the bureau of licenses so to do."

In section 3 it is provided:

"Any person desiring a license to engage as a solicitor within the city of Portland shall make application therefor to the bureau of licenses, on forms to be provided, stating the name and address of the applicant, the name and address of the person, firm or corporation which he represents, and the kind of goods offered for sale, or the kind of services to be performed. Such application shall be accompanied by a bond in the penal sum of $500.00 executed by a surety company or by two responsible freeholders residing in the city of Portland (or in lieu thereof a cash bond of equal amount), conditioned upon the making of final delivery of the goods ordered, or services to be performed, in accordance with the terms of such order, or failing therein, that the advance payment on such order be refunded. Any person aggrieved by the action of any such solicitor shall have a right of action on the bond for the recovery of money or damages, or both."

Ordinance No. 40468 was further amended so as to provide a license tax for a "solicitor," defined as "one who demands, receives, or accepts payment or deposit in advance of final delivery," for—

"Those on foot...................................Quarterly..$12.50
                                               Monthly .. 5.00
Those useing a vehicle ........................Quarterly..$25.00
                                               Monthly .. 10.00"

It was further provided that:

"Inasmuch as this ordinance is necessary for the immediate preservation of the public health, peace and safety of the city of Portland in this: That a condition now exists whereby in the past frauds have been perpetrated upon the public by certain solicitors, and which condition requires immediate remedy, therefore an emergency is hereby declared to exist and this ordinance shall be in force and effect from and after its passage by the council."

Plaintiff alleges in its complaint: That it is a corporation organized and existing under the laws of the state of Illinois, and a citizen of the state of Illinois. That its principal place of business is at the city of Indianapolis, Ind., where its goods are manufactured and prepared for shipment. In states where plaintiff does business it establishes a business office known as district sales manager's office, where orders are received from solicitors and forwarded to the main office of the company at Indianapolis, Ind. That plaintiff employs

solicitors to go out and solicit orders for its hosiery, and when such orders are received they are accompanied by a small cash payment, differing in amount according to the character, quality, and quantity of the hosiery order. That the deposit made by the purchaser is retained by the solicitor as payment for his services in full and is his sole compensation. That the system adopted by plaintiff, and under which it carries on its business by having its solicitors accept a small cash payment with all orders, which cash payment is to be in full compensation for their services, enables plaintiff to sell to its customers throughout the country at practically factory cost, and is for the benefit of the customers, and eliminates unnecessary and burdensome cost, expense, and commissions between factory and customer. That upon receiving an order the solicitor returns the same to the district sales manager, who in turn forwards it to the home office at Indianapolis. The order is filled in Indianapolis and shipped by parcel post C. O. D. direct to the purchaser. In no instance do goods go to the district sales manager's office, or otherwise than through parcel post C. O. D. direct to the purchaser.

Plaintiff alleges that the enforcement of this ordinance will (1) abridge the privileges and immunities of the plaintiff; (2) deprive plaintiff of liberty and property without due process of law; (3) deny to plaintiff the equal protection of the laws; (4) unlawfully interfere with and burden interstate commerce; and (5) that the license tax it imposes is unreasonable, exorbitant, discriminating, and prohibitory.

The privileges and immunities claimed by plaintiff pertain to its business of shipping its manufactured product in interstate commerce from Indianapolis, Ind., to purchasers at various points in the United States, particularly in this case to purchasers in Portland, Or., where its solicitors encounter the ordinance under consideration, imposing a license tax on solicitors and requiring them to give a bond conditioned for the making of final delivery of the goods ordered in accordance with the form of such order, or, failing therein, that the advance payment on such order be refunded.

Defendants concede that the city of Portland has no power to directly regulate, prohibit, or burden interstate commerce, or rights flowing proximately therefrom; but it is contended that the city may enact an ordinance, under its reserve police power, which will be valid although it may indirectly affect interstate commerce, and that the ordinance in question is such an ordinance.

What limitation there is to the local police power, when challenged as encountering the higher guaranties of the federal Constitution, has been a subject of much discussion, and the cases involving the question are numerous. In Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357, 359 (28 L. Ed. 923) Mr. Justice Field, speaking for the Supreme Court of the United States, said:

"But neither the amendment [the Fourteenth Amendment], broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity."

In Sligh v. Kirkwood, 237 U. S. 52, 58, 35 Sup. Ct. 501, 502 (59 L. Ed. 835), the Supreme Court said:

"The limitations upon the police power are hard to define, and its far-reaching scope has been recognized in many decisions of this court. At an early day it was held to embrace every law or statute which concerns the whole or any part of the people, whether it related to their rights or duties, whether it respected them as men or citizens of the state, whether in their public or private relations, whether it related to the rights of persons or property of the public or any individual within the state. New York v. Miln, 11 Pet. 102, 139. The police power, in its broadest sense, includes all legislation and almost every function of civil government. Barbier v. Connolly, 113 U. S. 27. It is not subject to definite limitations, but is coextensive with the necessities of the case and the safeguards of public interest. Camfield v. United States, 167 U. S. 518, 524. It embraces regulations designed to promote public convenience or the general prosperity or welfare, as well as those specifically intended to promote the public safety or the public health. Chicago, etc., Railway v. Drainage Commissioners, 200 U. S. 561, 592. In one of the latest utterances of this court upon the subject, it was said: 'Whether it is a valid exercise of the police power is a question in the case, and that power we have defined, as far as it is capable of being defined, by general words, a number of times. It is not susceptible of circumstantial precision. It extends, we have said, not only to regulations which promote the public health, morals, and safety, but to those which promote the public convenience or the general prosperity. * * * And further, "It is the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government."' Eubank v. Richmond, 226 U. S. 137, 142."

The purpose of the ordinance under consideration, as alleged in the complaint, is to license and regulate the business of solicitors who go from house to house or from place to place in the city of Portland, selling or taking orders for the sale of goods, wares, and merchandise for future delivery. The ordinance has this limitation: That it "shall apply only to solicitors who demand, accept or receive payment or deposit of money in advance of final delivery."

Under the system adopted by plaintiff for carrying on its business, the solicitor, upon receiving such an order from the purchaser, does not send it directly to the home office in Indianapolis, but turns it in to the district sales manager in Portland, who in turn forwards it to the main office in Indianapolis, where the order is filled and shipped by parcel post C. O. D. direct to the purchaser. In no instance do the goods go to the district sales manager's office, or otherwise than as through parcel post C. O. D. direct to the purchaser. The deposit or advance payment made by the purchaser for the goods is retained by the solicitor as payment for his services in full and is his sole compensation.

Plaintiff is not a solicitor, but a producer and a shipper. It does not go from house to house, and from place to place, taking orders for the sale of goods for future delivery. It is true that the plaintiff alleges that it employs solicitors to go out and solicit orders for its hosiery, and when such orders are received they are accompanied by a small cash payment, advanced by the purchaser, differing in amount according to the character, quality, and quantity of the hosiery ordered. But it is further alleged that the deposit made by the purchaser is retained by the solicitor as payment for his services in full,

and is his sole compensation. In other words, each sale is a separate and distinct service, for which the solicitor is paid in full by the purchaser, and is the solicitor's sole compensation for that service. He receives nothing from the plaintiff and has no interest in the unpaid balance, and, on the other hand, the plaintiff has no interest in the advance payment made by the purchaser to the solicitor. Its interest is in the prospective profits in shipping goods for the unpaid balance, to be collected, not by the solicitor, but by parcel post upon the shipment direct to the purchaser C. O. D.

Between the solicitor and this unpaid balance due the plaintiff upon delivery of the goods ordered is the district sales manager, whose relation to the plaintiff is not disclosed, but presumably he is plaintiff's agent in the particular locality. It follows that the solicitor's connection with the particular transaction terminates when he has turned in the purchaser's order to the district sales manager. The district sales manager forwards the order to the plaintiff, but no license tax or bond is required for that business or for the subsequent shipment. That shipment and the business of plaintiff to which it relates is left entirely free from taxes or other regulation by the state and by the city of Portland.

Can it be said, upon this state of facts, that the plaintiff's business in interstate commerce is subject to a burden because its independent solicitor, doing business in the city of Portland, as a solicitor, is required to pay a license tax and give a bond conditioned with respect to the faithful discharge of his obligations in carrying on that business? In New York ex rel. Pennsylvania Railroad Co. v. Knight, 192 U. S. 21, 27, 28, 24 Sup. Ct. 202, 48 L. Ed. 325, a much more intimate and continuous relation between state and interstate business was held by the Supreme Court separable for the purpose of local jurisdiction and regulation. In that case a cab service was maintained by the Pennsylvania Railroad Company to take passengers to and from its terminal in the city of New York. The state of New York imposed a franchise or license tax upon the railroad company for operating this cab service. The contention of the railroad company was that this cab service was merely an extension of its interstate transportation, furnishing the service to those who were about to take over its lines some interstate transportation, thus commencing at the home or hotel of the passenger in New York, instead of from the ferry landing, or like service to those who had already received such interstate transportation, thus completing the transportation to their places of destination. The Supreme Court held that this cab service was rendered wholly within the state of New York, and had no contractual or necessary relation to interstate transportation. It was either preliminary or subsequent thereto. It was independently contracted for, and not necessarily connected therewith; that when service is wholly within a state, it is presumably subject to state control. The burden is on him who asserts that, though actually within, it is legally outside the state, and, unless the interstate character is established, locality determines the question of jurisdiction.

The court refers to Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715, as a case closely in point, where spruce logs had been

drawn down from a place in New Hampshire and placed in a stream, also in New Hampshire, to be floated thence down the Androscoggin river to the state of Maine, there to be manufactured and sold. After they had been thus drawn down and placed in the New Hampshire stream, a tax was imposed on them by the state of New Hampshire. The validity of that tax was challenged, on the ground that the logs were in the course of transportation from New Hampshire to the state of Maine. The local tax in New Hampshire was sustained by the Supreme Court of New Hampshire, and also by the Supreme Court of the United States, on the ground that the logs had not commenced to move in interstate commerce. The Supreme Court, after referring to this case, said further:

" * * * Many things have more or less close relation to interstate commerce, which are not properly to be regarded as a part of it. If the cab which carries the passengers from the hotel to the ferry landing is engaged in interstate transportation, why is not the porter who carries the traveler's trunk from his room to the carriage also so engaged? If the cab service is interstate transportation, are the drivers of the cabs and the dealers who supply hay and grain for the horses also engaged in interstate commerce? And where will the limit be placed?"

The court was of opinion that the cab service was an independent local service, preliminary or subsequent to any interstate transportation, and therefore subject to the state tax.

In the recent case of Hall v. Geiger-Jones Co., 242 U. S. 539, 37 Sup. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643, the so-called "Blue Sky Law" of Ohio was involved in its state and interstate regulations, providing a license tax and certain prohibitions to prevent fraud in the sales of bonds and other securities. Geiger-Jones Company and others were engaged in the business of buying and selling in Ohio investment securities of corporations of Ohio and other states and foreign countries. The parties affected by the law objected to the statute on various grounds, among others that it conferred arbitrary power upon an officer, called a commissioner, to grant or refuse a license; that it deprived the parties of their property without due process of law, denied them the equal protection of the law, and imposed burdens on interstate commerce. The court, commenting upon the objection that the law was a burden on interstate commerce, said:

"The provisions of the law, it will be observed, apply to dispositions of securities within the state, and while information of those issued in other states and foreign countries is required to be filed (sections 6373–6379), they are only affected by the requirement of a license of one who deals in them *within* the state. Upon their transportation into the state there is no impediment—no regulation of them or interference with them after they get there. There is the exaction only that he who disposes of them there shall be licensed to do so, and this only that they may not appear in false character and impose an appearance of a value which they may not possess; and this certainly is only an indirect burden upon them as objects of interstate commerce, if they may be regarded as such. It is a police regulation strictly, not affecting them until there is an attempt to make disposition of them within the state. To give them more immunity than this is to give them more immunity than more tangible articles are given, they having no exemption from regulations the purpose of which is to prevent fraud or deception. Such regulations affect interstate commerce in them only incidentally. [Citing cases].

"We might, indeed, ask: When do the designated securities cease migration in interstate commerce and settle to the jurisdiction of the state? Material things, choses in possession, pass out of interstate commerce when they emerge from the original package. Do choses in action have a longer immunity? It is to be remembered that, though they may differ in manner of transfer, they are in the same form in the hands of the purchaser as they are in the hands of the seller, and in the hands of both as they are brought into the state. We ask again: Do they never pass out of interstate commerce? Have they always the freedom of the state? Is there no point of time at which the state can expose the evil that they may mask? Is anything more necessary for the supremacy of the national power than that they be kept free when in actual transportation, subjected to the jurisdiction of the state only when they are attempted to be sold to the individual purchaser? The questions are pertinent; the answer to them one way or the other, of consequence; but we may pass them, for regarding the securities as still in interstate commerce, after their transportation to the state is ended and they have reached the hands of dealers in them, their interstate character is only incidentally affected by the statute."

The statute was accordingly upheld.

In Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154, 39 L. Ed. 223, substantially the same question was dealt with by the Supreme Court as in the last case. The statute of Massachusetts prohibited the manufacture and sale of any article, product, or compound made in imitation of yellow butter produced from pure unadulterated milk or cream. It was provided, however, that the act should not be construed as prohibiting the manufacture or sale of oleomargarine in a separate and distinct form and in such manner as would advise the consumer of its real character, free from coloration or ingredient that caused it to look like butter. The purpose of the statute was to prevent fraud in the sale of an article of merchandise. It was objected that it was repugnant to the Constitution of the United States in all the provisions urged upon the court in the present case, including the provision giving Congress power to regulate commerce among the states. The court upheld the Massachusetts statute on the ground that the provisions of the Constitution of the United States did not compel the court to adjudge that the states had surrendered to the general government the power to prevent fraud in the sales of property, and that the Constitution did not secure to any one the privilege of defrauding the public.

These cases, and others that might be cited, make it sufficiently plain that the freedom of interstate commerce has been judicially limited in its supposed conflict with the police power of the state to such burdens as pertain directly to the movement of commerce among the several states, and not to regulations governing local business within the state, preliminary or subsequent thereto, and does not prohibit the state by general law or local ordinance from legislating for the general welfare of the public within the state, or provide proper regulations for safeguarding the public interests or for the protection of the public against fraud and deception, notwithstanding such legislation or regulation may indirectly affect interstate commerce.

[1] In the present case the ordinance declared that a condition existed in the city of Portland whereby frauds had been perpetrated upon the public by certain solicitors; that the condition required im-

mediate remedy, and an emergency was declared to exist, so that the ordinance should be in force and effect from and after its passage. There is a presumption that the declarations of the ordinance are true, and, when the contrary is not made to appear, they are so accepted by the court. Hendrick v. State of Maryland, 235 U. S. 610, 35 Sup. Ct. 140, 59 L. Ed. 385; Camas Stage Co., Inc., v. Kozer, 104 Or. 600, 606, 209 Pac. 95, 25 A. L. R. 27. The bill of complaint in this case is unverified and is unsupported by affidavit. It is obvious that the frauds referred to were easily perpetrated by the solicitor in receiving orders from the purchaser with an advance payment, which was his full compensation, and he had but the feeble restraint of continued employment to compel him to turn in the order to the district sales manager. This was a great temptation in many cases, since what he appropriated was his own, and his failure to turn in the order was not more serious than a personal neglect or omission. The purchaser, on the other hand, had no security that the solicitor would do his duty, and was in danger of losing the advance payment unless the solicitor's business was regulated in some such way as is provided in this ordinance. We are justified by the express terms of the ordinance, in the absence of affidavits to the contrary, in concluding that this was the actual situation in the city of Portland when the ordinance was adopted.

Plaintiff contends in argument that, if this license tax is required to be paid, it will be paid by the plaintiff and will be added to the price of the merchandise which the ultimate purchaser will have to pay. But the liability for this tax need not be incurred by either the solicitor or the plaintiff. They may carry on this business in Portland without a license or a bond, if the plaintiff will compensate the solicitor directly, instead of indirectly, by requiring an advance payment from the purchaser. The plaintiff can sell its goods by soliciting, and collect the full amount due when delivered to the purchaser C. O. D., and then remit to the solicitor the amount due him. The ordinance in no way interferes with such a business arrangement. But if plaintiff's present system is to be continued, what are the remedies for the prevention of fraud and deception by the solicitor? It is for the city to proceed in the usual way, and impose a license tax upon the solicitor, to identify him in his business and secure a fund that would reimburse the city for the supervision of such business, and require a bond, conditioned upon the making of a final delivery of the goods ordered in accordance with the terms of the order, or, failing in this, that the advance payment on such order would be refunded to the purchaser. The license tax and bond, under these circumstances, was a reasonable and just regulation, and the amount of the tax is not shown to be unreasonable.

[2] The purpose of the ordinance, then, appears plain and simple, and within the authority of the city of Portland to enact under its police power. There may have been business rivalry, but we cannot assume, without convincing evidence, that it was all there was in the ordinance. In this aspect, it was not a violation of any of the restrictions placed upon the state relating to the free movement of prop-

erty in interstate commerce. It was rather in aid of such commerce. It also appears that the business of the solicitor, while independent and self-sustaining, was only preliminary to the final and ultimate business of the plaintiff in sending forward the merchandise in interstate commerce, and for this reason is unobjectionable, as was held in Pennsylvania v. Knight, supra.

[3] We find nothing in the objection to the ordinance that it is not based upon a reasonable classification. The regulation applies only to solicitors engaged in soliciting orders for goods, wares, and merchandise, who demand, accept, or receive payment, or take such money, in advance of final delivery. This is a reasonable classification. Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; Flint v. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Tanner v. Little, 240 U. S. 369, 382, 36 Sup. Ct. 379, 60 L. Ed. 691; Northwest Auto Co. v. Hurlburt, 104 Or. 398, 411, 207 Pac. 161.

[4] We are of opinion that the ordinance is within the police power of the city, and is therefore valid.

The decree of the District Court, dismissing the bill of complaint, is therefore affirmed. ·