WALTON & CARR *v.* CITY COUNCIL OF AUGUSTA.

Persons engaged on their own account in a "commercial street brokerage business," in the course of which they take orders for goods to be filled by non-resident dealers, the brokers, unless otherwise directed, placing these orders at their own option with any of their "correspondents," and reselling any goods rejected after their arrival in this State, are not, by virtue of the "interstate commerce clause" of the Federal constitution,

exempt from a municipal tax imposed upon commercial street brokers by the authorities of the city in which they do business.

Argued July 5, — Decided July 19, 1898.

Certiorari. Before Judge Callaway. Richmond superior court. April term, 1898.

*J. S. Reynolds*, for plaintiffs in error.

*W. H. Barrett*, contra.

LUMPKIN, P. J.   The plaintiffs in error were convicted, in the recorder's court of the City of Augusta, of having violated an ordinance providing for the levy and collection of a license-tax for the year 1898 upon every commercial street broker or firm of such brokers.   They sued out a certiorari, alleging that the judgment rendered by the recorder was erroneous, because "the tax against brokers doing an interstate business, as defendants do, is in violation of that part of the constitution of the United States" conferring upon Congress the power "to regulate commerce with foreign nations and among the several States." The certiorari was overruled, and the case is now here for review. At the trial before the recorder, the defendants testified as follows:   "We, Walton & Carr, are both residents of Augusta, and do a commercial street brokerage business, and have paid no license-tax for the year 1898.   We represent houses only out of the State of Georgia, and sell all goods by sample, except where a former purchaser desires an order duplicated; in that event no samples are shown.   All orders are sent direct to shippers outside of the State, who ship direct to the purchaser. Goods are sometimes rejected by the purchaser after the goods have arrived in this city; in such cases, we resell the goods, and consider such sales a part of our business, receiving the usual brokerage on said goods.   The said rejected goods are still in the hands of the railroads as the property of the foreign shipper until sold and delivered.   We are paid a brokerage (so much per car or so much per pkge.), and we do not receive a commission.   It is the custom of purchasers to inquire for whom we are selling, and in that event the shipment must come from the dealer named as seller.   If such inquiry is not made, we have the right to place the order with any of our correspondents, the only obligation being that the shipment must come up to sam-

ple. The brokerage allowed by our different correspondents is at times different. For instance, we are sometimes allowed $1.50 per car from one correspondent, and at the same time $2.00 per car for the same class of goods from another."

An analysis of this evidence leaves little room for doubt as to the exact nature of the business conducted by the plaintiffs in error. The simple truth of the matter is, they are conducting, on their own account, a commercial street brokerage. "Interstate commerce" is only indirectly and remotely involved. It is evident that they frequently obtain orders without knowing at the time with whom the same will be placed. Certainly, in such instances, they have no non-resident principal. Their "correspondents" are simply non-resident dealers with whom they themselves place orders when it suits them to do so. They are in no fair sense "agents" for conducting business in behalf of dealers residing beyond the limits of this State. They candidly admit that if a purchaser inquires for whom they are selling, the shipment must come from the dealer named as seller, but if no such inquiry is made, they have the right to place the order received with any dealer they may select; and in view of the fact that they sometimes get "$1.50 per car from one correspondent, and at the same time $2.00 per car for the same class of goods from another," it is to be presumed that in placing a particular order they will be governed by their own interest and not that of a supposed principal. Again, they re-sell rejected goods after their arrival in this State, and surely this is not "interstate commerce," although such goods may remain "in the hands of the railroads as the property of the foreign shipper until sold and delivered." It is, of course, our duty and our pleasure to abide by any interpretation of the Federal constitution announced by the Supreme Court of the United States, when the same is clear and distinct; but we are not required to go beyond the decided cases, when we honestly believe that the effect of so doing would be to unduly extend the operation of the "interstate commerce clause," which has already been construed to cover numerous classes of transactions which were, in our opinion, never contemplated by the framers of the constitution.

Moreover, we think the present case is directly controlled by a decision of that high tribunal in Ficklen v. Shelby County Taxing District, 145 U. S. 1, in which it was held that general merchandise brokers were subject to State taxation, even though the tax incidentally affected interstate commerce, if it did so in a manner so remote "as not to amount to a regulation of such commerce." Mr. Chief Justice Fuller cites numerous previous decisions bearing upon this question, some of which are relied on by counsel for the present plaintiffs in error. It appears in each of the following cases, viz., Robbins v. Shelby County Taxing District, 120 U. S. 489; Asher v. Texas, 128 U. S. 129; Stoutenburgh v. Hennick, 129 U. S. 141; Brennan v. Titusville, 153 U. S. 289, that the person making the sale was the immediate agent of a non-resident principal. The case of Stratford v. City Council of Montgomery, 110 Ala. 619, is easily distinguishable from the case at bar; for it appears in that case that though Stratford represented several non-resident principals, he did so under special agreements made with them separately and before any orders were solicited or received. The case of Leloup v. Port of Mobile, 127 U. S. 640, was cited in the brief of counsel for the defendant in error in the Ficklen case, supra, and was relied on by Mr. Justice Harlan in his dissenting opinion; but nevertheless, the decision in Leloup's case was not treated by a majority of the court as authority for a conclusion contrary to that reached by them in Ficklen's case. With all respect, it seems to us that if the principle announced in Leloup's case is to be considered as controlling, no license-tax could be exacted by a State of a broker any part of whose business, however small, involved interstate commerce. But, as has been seen, that case has not been strictly adhered to, and is not, therefore, to be considered as governing the case at bar. We are entirely satisfied that the judge of the superior court was right in overruling the certiorari.

*Judgment affirmed.    All the Justices concurring.*