EARL C. WILK, *Plaintiff in Error*, v. CITY OF BARTOW, *Defendant in Error.*

Opinion Filed July 18, 1923.

1. A municipality can not by ordinance lawfully impose a burden upon interstate commerce.

2. The negotiation of sales of goods which are in another state, for the purpose of introducing them in the state in which the negotiation is made, is interstate commerce.  Robbins v. Shelby Taxing District, 120 U. S. 489.

3. While a tax on peddlers who sell and forthwith deliver goods is within the police power of the state, a tax on one who travels and solicits orders for goods to be shipped from without the state is a burden on interstate commerce and unconstitutional.  Crenshaw v. Arkansas, 227 U. S. 389.

4. Municipal ordinances imposing licenses on those who solicit orders within the municipalities from samples, which they

do not sell, or articles to be shipped from another state, and which are subsequently shipped by the seller to the agents who solicit the orders and the articles sold when received by such agents delivered by them to the respective purchasers, is an unconstitutional burden on interstate commerce beyond the police power of the state and can not be justified as license taxes on peddlers, even though such ordinances define the persons soliciting the orders as "peddlers;" and so held as to the ordinance of the City of Bartow set out in the opinion as applied to this case.

5. A person convicted and sentenced in a municipal court for not paying a license tax under an ordinance is properly discharged on habeas corpus where it appears that the acts for which the conviction was had constitute interstate commerce to which the municipal ordinance can not lawfully be applied.

This case was decided by Division B.

A Writ of Error to the Circuit Court for Polk County; John S. Edwards, Judge.

Reversed.

*Henry H. Cole,* for Plaintiff in Error;

*C. M. Wiggins,* for Defendant in Error.

WEST, J.—The petitioner, Earl C. Wilk, was tried and convicted upon a charge of "peddling" in the City of Bartow without having first paid the license tax imposed by an ordinance of the city as a prerequisite to the right to conduct such business in that city. Section 85 of the ordinance alleged to have been violated, designated Ordinance No. 6-A, Municipal Ordinances of Bartow, is as follows:

"Peddlers at Retail:  All persons engaged in selling

goods, wares and merchandise at retail, excepting regularly licensed local merchants, shall pay a license tax of $50.00. Provided that this section shall be held to include any person by whatsoever name his trade or occupation may be known, who shall engage in selling or offering to sell goods, wares or merchandise direct to the consumer, by sample or otherwise, other than those persons herein specifically excepted, and further that this section shall be held to include persons other than those herein specifically excepted who stop at hotels or rent rooms or otherwise temporarily located in this city and sell by samples or take orders for future delivery or otherwise at retail.''

The case was submitted upon an agreed statement of facts of which the following is an abridgement:

The petitioner sold brushes manufactured by the Fuller Brush Company at Hartford, Connecticut. His method of doing business was to go from house to house in the City of Bartow and display samples of his goods to prospective purchasers, solicit orders and make sales at retail direct to the purchaser. If a sale was effected an order was made, describing the goods purchased. Upon this order there was a place for the customer's signature, but it was not the practice of petitioner to have the customer sign the order. Attached to the agreed statement is a copy of this order marked exhibit ''A'' and made a part of the stipulation. At the end of each week petitioner compiled a ''Sales Representative's Order,'' copy of which is attached to the agreement marked exhibit ''B'' and made a part of the stipulation, upon which order articles sold during the week were enumerated. This order was mailed to the office of the company's distributing station, Savannah, Georgia, upon receipt of which said distributing station made up and shipped to petitioner a package containing the articles enumerated, which articles were loosely packed in one con-

tainer, the different orders of individual customers not being separated. Upon receipt of shipments the petitioner opened the package, selected from the mass of articles therein the several articles called for on individual orders and personally delivered same to each purchaser, collecting the purchase price, retaining 40 per cent as his compensation and remitting the remainder to the company at Savannah. But the Savannah office had no information as to whom goods were to be delivered except such as was contained upon the copies of sales representative's orders mailed weekly to the Savannah office. Daily reports were made by petitioner to the district manager of the company at Tampa of prospective purchasers called on by him, but no remittances were made to him and he had no oversight of the accounts between the petitioner and the company. The operations of petitioner as herein enumerated were covered by a contract of employment between the Fuller Brush Company and himself which is attached to the agreed statement of facts marked exhibit "C" and made a part of the stipulation. The petitioner was not a regularly licensed merchant and had not taken out any license to do business in the City of Bartow.

In substance the agreed statement is not materially affected by the exhibits, so they are not reproduced.

There was an appeal from the judgment of conviction, which was subsequently abandoned, after which petitioner surrendered to the city authorities, and, being in custody under the judgment of conviction, applied to the Circuit Judge for a writ of *habeas corpus* on the theory that upon the showing made by the agreed statement of facts, which was set out in full in the petition for the writ, the imprisonment was illegal, the contention being that the business in which he was engaged as conducted by him was interstate commerce and therefore not subject to state regulation.

The writ of habeas corpus was issued. Upon a hearing on return to the writ, in addition to the agreed statement of facts evidence of the following facts, relating to the manner in which petitioner prosecuted his business, was submitted:

That the sales slip referred to as exhibit "A" in the agreed statement of facts was made in triplicate, one of which was sent to the company's agent in Tampa; that they should have been sent daily, but petitioner did not mail them daily, but usually took them over on trips that he made from Bartow to Tampa, but did not always take them before the goods were ordered and delivered to the purchasers; that he was not required to deliver them or to inform the company to whom goods were sold before they were shipped him for delivery; that if a purchaser refused goods ordered, petitioner could return the goods to the company and get credit for them; that his instructions were to deliver the goods and collect the purchase price, and that if he made delivery without making collection of the purchase price he was responsible to the company for the purchase price, but all goods shipped out by the company were charged to the petitioner on the company's books, and that when goods arrived in Bartow they belonged to the company and not to the petitioner; that the district manager in Tampa, Florida, exercised general supervision over salesmen in that district and that salesmen were instructed to submit to him triplicate copies of sales slips daily; that salesmen also submitted to him report of calls made and total sales made, which report gave total amount of sales made but gave no detail of what was sold to each customer.

The petitioner was, by an order of the Circuit Judge, remanded to the custody of the officer. To review this

judgment writ of error was allowed and taken from this court.

The question to be determined is whether the ordinance of the City of Bartow, as applied to the facts of this case, is invalid as an attempt to interfere with and regulate interstate commerce.

In a number of cases in which the facts were similar somewhat to the facts of this case the Supreme Court of the United States has considered this question. The case of Robbins v. Shelby Taxing District, 120 U. S. 489, has been referred to in later cases as the leading case in that court on this subject. That case involved an inquiry into the question of whether the statute of the State of Tennessee, but applicable only to the taxing district of Shelby County, imposing a license tax on "drummers," was repugnant to the commerce clause of Federal Constitution. The plaintiff in error in that case was engaged, on behalf of his principal, whose place of business was in the City of Cincinnati, in soliciting orders by exhibiting samples in the City of Memphis for the sale of goods. Not having paid the license tax imposed, he was prosecuted and convicted of a violation of the statute, and this judgment was on appeal affirmed by the Supreme Court of the State. On writ of error from the Supreme Court of the United States the statute was held to be unconstitutional, the judgment was reversed, and plaintiff in error ordered discharged. The court, speaking through Mr. Justice Bradley, among other things said: "The only way in which commerce between the states can be legitimately affected by state laws, is when, by virtue of its police power, and its jurisdiction over persons and property within its limits, a state provides for the security of the lives, limbs, health, and comfort of persons and the protection of property; or when it does those things which may otherwise incidentally affect

commerce, such as the establishment and regulation of highways, canals, railroads, wharves, ferries, and other commercial facilities; the passage of inspection laws to secure the due quality and measure of products and commodities; the passage of laws to regulate or restrict the sale of articles deemed injurious to the health or morals of the community; the imposition of taxes upon persons residing within the State or belonging to its population, and upon avocations and employments pursued therein, not directly connected with foreign or interstate commerce or with some other employment or business exercised under authority of the Constitution and laws of the United States; and the imposition of taxes upon all property within the State, mingled with and forming part of the great mass of property therein. But in making such internal regulations a state cannot impose taxes upon persons passing through the state, or coming into it merely for a temporary purpose, especially if connected with interstate or foreign commerce; nor can it impose such taxes upon property imported into the State from abroad, or from another state, and not yet become part of the common mass of property therein; and no discrimination can be made, by any such regulations, adversely to the persons or property of other states; and no regulations can be made directly affecting interstate commerce. Any taxation or regulation of the latter character would be an unauthorized interference with the power given to Congress over the subject, * * * In a word, it may be said, that in the matter of interstate commerce the United States are but one country, and are and must be subject to one system of regulations, and not to a multitude of systems. The doctrine of the freedom of that commerce, except as regulated by Congress, is so firmly established that it is unnecessary to enlarge further upon the subject." The prin-

ciples announced in that case have been strictly adhered to by the court since its decision.

In Caldwell v. North Carolina, 187 U. S. 622, the plaintiff in error was tried and found guilty of an alleged offense in having engaged in the business of delivering pictures without having first obtained a license to do so. This judgment was affirmed by the Supreme Court of North Carolina. On writ of error from the Supreme Court of the United States the judgment of the Supreme Court of the State was reversed. The ordinance of the City of Greensboro involved in that case required that every person engaged in the business of selling or delivering picture frames, etc., in the City of Greensboro, whether an order for same had been previously taken or not, unless said business was carried on by the same person in connection with some other business for which a license had been paid to the city, should pay a license tax of $10 for each year. The plaintiff in error was employed by a company engaged in making pictures and frames in Chicago. He solicited orders in the City of Greensboro, North Carolina, sold pictures and frames to individuals there, which were shipped, the pictures and frames separately, to him for the company, and he placed the pictures in their proper frames and delivered them to the persons ordering them. This transaction was held to be interstate commerce and beyond the power of the State, the court holding that it made no difference that the pictures and frames were shipped to the company itself at Greensboro, where the agent of the company received them from the railroad company at its depot, carried them to his room in Greensboro, opened the package, took out and assorted them and put them together, and in this form delivered them to the purchasers in the City of Greensboro who had previously ordered them.

In Dozier v. Alabama, 218 U. S. 124, the plaintiff in error was convicted and sentenced under a statute of the State of Alabama imposing a license tax on persons who did not have a permanent place of business in the State and kept picture frames as a part of their stock and trade, if they solicited orders for the enlargement of pictures or for picture frames or if they sold or disposed of picture frames. In that case a company having its only place of business in Chicago, which was engaged in the business of making portraits from photographs and in the manufacture of picture frames, solicited orders in Alabama without having first paid the license tax imposed by the statute. Plaintiff in error, who also had no permanent place of business in Alabama and had paid no license tax, was an agent of the company, who delivered pictures and frames to purchasers in Alabama and collected for them. The pictures and frames were sent to the agent and remained the property of the company until paid for and delivered. In that respect the case is identical with the one under consideration, but the statute of the State as applied to that case was held to be a regulation of interstate commerce among the states and void under the Constitution, the court holding that ''what is commerce among the states is a question depending upon broader consideration than the existence of a technically binding contract, or the time and place where the title passed.''

In Crenshaw v. Arkansas, 227 U. S. 389, the merchandise sold was ranges, and in Rogers v. Arkansas, 227 U. S. 401, the property sold was buggies. The charge in each case was that the business was prosecuted without first having paid the license tax imposed by the local authorities upon such business. The transaction in each instance was similar to the dealings of petitioner here, as shown by the statements of facts. In each of these cases there was a con-

viction in the trial court of the state and affirmance of the judgment by the Appellate Court, but on writ of error from the Supreme Court of the United States this judgment was reversed upon the ground that the business constituted interstate commerce and could not be taxed by the State.

To like effect are the cases of Brennan v. Titusville, 153 U. S. 289; Rearick v. Pennsylvania, 203 U. S. 507. The cases of Emmert v. Missouri, 156 U. S. 296, and Wagner v. Covington, 251 U. S. 95, and similar cases, are differentiated from the class of cases cited, in this, that in those cases the property sold was carried from one state into another and upon making a sale delivery contemporaneously was made to the purchaser. The distinction has always been recognized. In Robbins v. Shelby Taxing District, *supra,* Mr. Justice Bradley, speaking for the court, said: ''When goods are sent from one state to another for sale, or, in consequence of a sale, they become part of its general property, and amenable to its laws; provided that no discrimination be made against them as goods from another state, and that they be not taxed by reason of being brought from another state, but only taxed in the usual way as other goods are. Brown v. Houston, 114 U. S. 622; Machine Co. v. Gage, 100 U. S. 676. But to tax the sale of such goods, or the offer to sell them, before they are brought into the State, is a very different thing, and seems to us clearly a tax on interstate commerce.'' The distinction is also clearly made in Crenshaw v. Arkansas, *supra.*

In Cason v. Quimby, 60 Fla. 35, 53 South. Rep. 741, the agreed facts substantially were that the petitioner was an agent and traveling salesman of the Aluminum Cooking Utensil Company of Pittsburg, Pennsylvania; that his business was to canvass for the company, taking orders for

goods by showing samples; when orders were taken he sent the order to the company at Pittsburg, Pennsylvania, and when he received the goods he delivered them to the customers, received the money therefor and remitted it to the company in Pennsylvania; the goods were the property of the company until they were paid for and delivered; the agent received a salary from the company and no commission on sales; he formerly lived in Virginia, but had no permanent home; he had been in Florida for four or five years, the goods were sold on orders taken by showing samples; the goods were sent to the agent by the company in Pennsylvania pursuant to orders sent in from Lake City, Florida, being packed together in a large package or box, such package or box containing the smaller package of each customer wrapped to itself; the large package was broken by the agent at Lake City, Florida, and he delivered the smaller package to the customer and received the money therefor.

In that case this court held that the transaction was interstate commerce and that the ordinance of the. City of Lake City there involved as applied to the facts was invalid as a burden upon interstate commerce.

The cases cited are decisive of the case under consideration. Tested by the conclusions reached in those cases, the transaction here in its essence was interstate commerce, and as applied to this case the ordinance of the City of Bartow is invalid because repugnant to the commerce clause of the Federal Constitution.

The judgment is therefore reversed.

WHITFIELD, P. J., AND TERRELL, J., concur.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., concur in the opinion.