STATE *ex rel.* RACHEL B. BETH, *et vir* v. J. M. BURNETT, as Tax Collector of Hillsborough County.

194 So. 277
En Banc
Opinion Filed February 20, 1940

*J. P. Marchant, Worth, Bivens & Lively,* for Plaintiff in Error.

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for Defendant in Error.

CHAPMAN, J.—On October 2, 1939, the relator, Rachel B. Beth, joined by her husband, filed in the Circuit Court of Hillsborough County, Florida, her petition for an alternative writ of mandamus against J. M. Burnett, as tax collector of said county, the respondent. The petition recited that she was operating a restaurant in the City of Tampa and that the service rendered by her consisted of the preparation and service of meals to the public and that not more than three persons were employed in the restaurant.

The relator made written application to the respondent for the issuance of a license for the fiscal year 1939-1940 under the provisions of Chapter 18011, Laws of Florida, Acts of 1937, and tendered concurrently with the written application the sum of $15.25, which comprised the items, viz.: for a state license $10.00, as provided in Section 6 of Chapter 18011, *supra,* and the sum of $5.00 as a license according to the provisions of Section 2 of said Act; and the County Judge's fee in the sum of 25c as prescribed by Section 1 of Chapter 18011, *supra.*

An alternative writ of mandamus issued and a demurrer thereto and a motion to quash were filed by the respondent and directed to the alternative writ. The grounds of the

demurrer and the motion to quash are substantially the same, viz.: (a) that the allegations of the alternative writ are legally insufficient; (b) the alternative writ fails to state a cause of action; (c) the alternative writ fails to show a legal duty on the respondent; (d) the facts appearing in the alternative writ constitute no constitutional and statutory duty on the respondent; (e) the relator, as shown by the writ, is selling tangible personal property within the provisions of Section 5 of Chapter 18011, Acts of 1937; (f) the relator failed to comply with Section 5 of Chapter 18011, *supra;* (g) the relator is liable for the inspection tax provided by Chapter 16042, Acts of 1933, as amended by Chapter 17062, Acts of 1935 in addition to the tax provided by Section 5 of Chapter 18011, *supra.*

The cause was heard in the lower court on the motion to quash the demurrer, and on the 17th day of October, 1939, the Honorable Harry N. Sandler entered an order sustaining the respondent's motion to quash the alternative writ, and the relator announced in open court that she did not desire to amend her petition or the alternative writ and an order was then and there entered dismissing the petition. A writ of error was sued out, an appeal perfected, and the case is here for review by this Court.

The questions for decision by the Court are: (1) whether the relator after paying the tax under Chapter 16042, Acts of 1933, as amended by Chapter 17062, Acts of 1935, shall also pay for a license under Chapter 18011, Acts of 1937; and (2) if a license tax is required under the last numbered statute, whether it be collected under Section 5 or Section 6.

Chapter 16042, Acts of 1933, creates or establishes the Hotel Commission of Florida and prescribes its duties. Section 7 thereof defines a restaurant, viz.:

"SECTION 7. 'RESTAURANT DEFINED.—Every building

or other structure and all out buildings in connection and any room or rooms within any building or other structure or any place or location kept, used, maintained as, advertised as, or held out to the public to be a place where meals, lunches or sandwiches are prepared or served, either gratuitously or for pay, shall, for the purposes of this Act, be defined to be a restaurant, and the person or persons in charge thereof, whether as owner, lessee, manager or agent, for the purposes of this Act, shall be deemed the proprietor of such restaurant, and whenever the word 'restaurant' shall occur in this Act, it shall be construed to mean every such structure described in this Section."

Section 8 of said Chapter provides that persons engaged in the business of conducting a hotel, apartment house, rooming house or restaurant shall procure a license which shall run from October 1st to September 30th next following its issuance. Section 11, as amended by Chapter 17062, Acts of 1935, prescribes the amount of the license fee for restaurants, lunch or sandwich stands or counters, viz.:

"The license fee for conducting a restaurant, lunch or sandwich stand or counter in this State shall be in accordance with the following schedule, to-wit:

Where curb service is rendered _____ $ 4.00

Where there are accommodations for from 1 to 14 persons _____ 3.00

Where there are accommodations for from 15 to 29 persons _____ 4.00

Where there are accommodations for from 30 to 49 persons _____ 5.00

Where there are accommodations for from 50 to 74 persons _____ 6.00

Where there are accommodation for from 74 to 124 persons _____ 7.50

Where there are accommodations for from 125 to
199 persons _____ 10.00
Where there are accommodations for from 200 or
more persons _____ 12.00
Said license fee shall be paid to the Hotel Commissioner
before a license is issued, and said license shall be kept in
the restaurant, lunch or sandwich stand or counter in a
conspicuous manner, properly framed."

Section 3 of Chapter 16042, *supra,* makes it the duty of
the Hotel Commission to inspect, at least annually, all hotels,
apartment houses, rooming houses, and restaurants in the
State of Florida, and the moneys collected by license fees
are to be used to defray costs of inspection.

This Court has held that restaurants, cafe's, cafeterias,
lunch or sandwich stands are not subject to nor are they
required to pay a privilege tax under what is commonly
recognized as the chain store tax law, being Chapter 16484,
Acts of 1935. See Lee v. The Cloverleaf, Inc., 130 Fla.
435, 177 So. 722. Thus we conclude that restaurateurs
of Florida were required to pay only an inspection tax
to the Hotel Commission of Florida as provided in Chap-
ter 16042, Acts of 1933, unless an' additional tax thereon
was imposed by Chapter 18011, Acts of 1937.

Counsel for relator contends on the record here that when
the rules of statutory construction are correctly applied to
Chapter 18011, the conclusion is inevitable that it was not
the intention of the Legislature to impose a state license
tax on restaurants in Florida, but if such a tax was imposed
the same is collectible under Section 6 rather than Section
5 of the Act. On the other hand, counsel for the respond-
ent contends that restaurants doing business in Florida are
required to pay an inspection tax to the Hotel Commission
under the provisions of Chapter 16042, Acts of 1933, as
later amended, and that restaurants other than those de-

scribed in Lee v. The Cloverleaf, Inc., *supra,* are not re-quired to pay the privilege tax imposed by the chain store tax Act under Chapter 16848, Acts of 1935, and that it was clearly the intention of the Legislature, by the enact-ment of Chapter 18011 that restaurants doing business in Florida should pay a tax to defray the costs of govern-ment and that the said tax should be collected under Sec-tion 5 rather than Section 6 of the Act.

It is a well established rule of statutory construction that when the language of a statute is plain and unam-biguous and admits of but one meaning effect must be given to it accordingly, and the courts are not justified in the interpretation thereof to depart from the plain and natural meaning of the language employed on the part of the Leg-islature. See Board of County Comm'rs v. State *ex rel.* Moore, 96 Fla. 495, 118 So. 313; A. R. Douglass, Inc., v. McRainey, 102 Fla. 1141, 137 So. 157. Our study of Chapter 18011, *supra,* convinces us that it was the inten-tion of the Legislature to raise revenues or money to be used to defray the expenses or costs of government and that restaurants, until the enactment of Chapter 18011, had been paying only the inspection fee provided by Chap-ter 16042, Acts of 1933, as later amended, and it clearly appears that the Legislature intended to tax them under the provisions of Chapter 18011, Acts of 1937, and the only pertinent question here is whether or not the tax should be collected under Section 5 or Section 6 of the Act, which are, viz.:

"Section 5. Every person engaged in the business of trading, buying, bartering, serving or selling tangible per-sonal property as owner, agent, broker, or otherwise, shall pay a license tax of $25.00 (which shall entitle him to maintain one place of business, stationary or movable) and shall pay $25.00 for each additional place of business,

stationary or movable) and shall pay $25.00 for each additional place of business, provided that the said twenty-five dollar license tax shall not be required for any place of business licensed under the provisions of Chapter 16848, Laws of Florida, Acts of 1935. Wholesalers and others who do not pay a license tax calculated wholly or in part on gross receipts from their sales and who keep a stock of merchandise for sale shall pay an additional tax of $1.50 for each thousand dollars of their stock of merchandise (other than petroleum products). Vehicles used by any person for the sale and delivery of tangible personal property at wholesale from his established place of business on which a license is paid, shall not be construed to be separate places of business and no license may be levied on such vehicles or the operator thereof as salesmen or otherwise, by the State or any County or Municipality, any other law to the contrary notwithstanding.

"No license shall be required under this Section, where the trading, buying, bartering, serving, or selling of tangible personal property is a necessary incident of some other business classification for which an occupational license is required by this Act or other law of this State, and is carried on at the place of business licensed under such other classification (nor shall this section apply to any person engaged exclusively in the sale at retail of gasoline and other petroleum products.)

Section 6. Every person engaged in any business as owner, agent, or otherwise, the principal function of which is the performance of some service for the public in return for a consideration, shall for each place of business pay a license tax of $10.00, plus one dollar for each person in excess of five persons employed thereat; provided, said license shall not exceed $50.00.

"No license shall be required under this section where

the performance of service for the public is incidental to and a part of some other business classification for which a license is required by this Act, or other law of this State, and is carried on at the place of business licensed under such classification and not more than three persons are employed in the performance of such service (nor shall a license be required under this section for any business, the principal function of which is the performance of some service for the public in return for a consideration, when the nature of the service is such that an occupational license is required of such business by some other section of this Act or law of this State."

Section 5 provides that persons engaged in the business of buying, bartering, serving or selling *tangible personal property* as owner, agent, broker or otherwise shall pay a license tax of $25.00 * * * wholesalers not paying a license tax calculated on gross receipts shall pay an additional tax of $1.50 for each thousand dollars of their stock of merchandise * * * vehicles used for the delivery of tangible personal property at wholesale shall not be construed to be a separate business on which a license shall be paid, and a license shall not be required where the sale of tangible personal property is a necessary incident for some other business for which an occupational license is required.

Section 6 requires persons engaged in business, the principal function of which is the performance of some service for the public for a consideration and each place of business is required to pay $10.00 plus one dollar for each person in excess of five persons employed thereat, but no license shall exceed $50.00. An exception, or exceptions, to the rule above stated is set forth in Section 6. It is clear that a restaurant renders service for a consideration. The restaurateur is required to buy food, cook and prepare the same, supply tables or counters and chairs or stools,

with linens, spoons, knives and forks; a kitchen fully equipped is likewise necessary to furnish the service in the form of food, and these multiple items are necessary and required by the public on the part of the restaurateur when he renders the service to the public for a consideration.

The Legislature, by Section 6, classified restaurants according to size—first providing that the sum of $10.00 was the minimum amount for each place of business, plus the further sum of $1.00 for each person in excess of five persons employed in said business. This language is employed to require an increase in the license tax required on a scale of not less than $10.00 and an additional amount for the number of persons employed in excess of five. This tax is based or classification made on the number of persons employed when the minimum amount of the tax is $10.00 and the maximum amount not to exceed $50.00. It was beyond doubt the intention of the Legislature that Section 6, *supra,* should apply to restaurants in Florida. The license tax imposed by Section 6 of Chapter 18011 is in addition to the inspection tax imposed by Chapter 16042, Acts of 1933 and as amended. A restaurant such as is operated by the relator here, is not subject to the chain store tax Act, same being 16848, Acts of 1935.

It became the lawful duty of the respondent as Tax Collector of Hillsborough County, when the total sum of $15.25 was tendered to him by the relator under the provisions of Sections 1, 2 and 6 of Chapter 18011, Acts of 1937, to issue the 1939-1940 license as requested. It was error on the part of the lower court to enter an order sustaining the motion of the respondent to quash the alternative writ of mandamus.

The judgment appealed from is hereby reversed.

TERRELL, C. J., WHITFIELD, BROWN, BUFORD and THOMAS, J. J., concur.