**W. C. DORSETT v. H. EARNEST OVERSTREET, as Tax Collector of Dade County, et al.**

18 So. (2nd) 759                                                  January Term, 1944
May 19, 1944                                                              En Banc
On Petition for Rehearing July 7, 1944

*W. O. Bozeman* and *Wallace F. Perry,* for appellant.
*Weintraub & Martin,* for appellees.

THOMAS, J.:

The appellant is a broker selling in several south Florida counties the products of manufacturers he selects. He maintains no stock, but exhibits samples to prospective customers

who are thus enabled to determine the variety and quality of goods they wish to buy. Other than his samples his equipment consists only of office furniture. The concerns he patronizes have their principal places of business outside the State of Florida. When a customer approaches him relative to the purchase of goods he displays the samples and orders according to the customer's selection, but in cases where the same merchandise can be obtained from more than one dealer he chooses the one from which the goods will be ordered. He makes no deliveries; pays his own office expenses; and is, presumably, compensated by the seller when goods are delivered and accepted.

The tax collector sought to collect from him an occupation license tax under Section 5, Chapter 18011, Laws of Florida, Acts of 1937, Sec. 205.59, Florida Statutes, 1941, and F.S.A. The appellant contends that he is engaged in interstate business only, hence exempt from the payment of the license fee. He charges that such an imposition would affect interstate transactions in violation of the commerce clause of the Federal Constitution (Article I, Sec. 8, cl. 3). The chancellor rejected his prayer for injunction and dismissed his bill with prejudice.

It seems then that appellant is an independent operator who does not claim the authority to bind any dealer; does not undertake to represent any particular purchaser. He merely solicits orders for the purchase of products and then forwards these orders to such jobbers, dealers, or manufacturers as may be able to supply the merchandise to the satisfaction of his customers. As we observed in the very beginning, he is a typical broker.

Our first impression was that payment of an occupation license tax by him could not be considered to burden interstate commerce. We have been obliged to abandon it, however, because of our study of the authorities which we will presently quote, in the light of the following significant features of the record. The bill alleged that plaintiff was "engaged in interstate commerce transactions solely, whereby [he] displays, by samples, goods and products of manufacturing concerns *located beyond the limits of the State of Florida*

to various jobbers in Dade County, Florida, for the purpose of inducing said jobbers to place in stock the merchandise and goods sold by said non-resident manufacturers. . . ." His testimony bore out these allegations, for he stated that he sold "for principals *that reside out of the state,"* and he replied in the affirmative to a question by the chancellor himself, "You show samples and have the goods shipped from another territory?". The construction placed by the chancellor upon this phase of the testimony is clearly shown by the recital in his decree: "Plaintiff . . . desires to continue as a . . . broker . . . selling . . . by sample or oral description . . . , the delivery being made from wholesalers, factors and owners *outside of Florida.* . . ." (Italics in this paragraph have been supplied.)

The question then is whether a broker of this character, one who places all orders with concerns beyond the limits of the State, can be required to obtain the occupation license.

Of course, the matter being one of construction and application of the Federal Constitution, it is appropriate that we search for a solution in the decisions of the Supreme Court of the United States.[1] The question has been often entertained by that tribunal and decided with respect to all sorts of businesses.

It seems clear that if, in his dealings, some orders were placed by appellant with firms situated in this State he could not escape the license. J. E. Raley and Bros. v. Richardson, 264 U. S. 157, 68 L. Ed. 615, 44 Sup. Ct. Rep. 256. In that case the Supreme Court of the United States approved the decision of the Supreme Court of Georgia, 154 Ga. 140, 113 S.E. 531, holding such a license applicable when orders were sent "sometimes to nonresident and sometimes to resident principles." The former court expressly limited its considera-

---

[1] Decisions of the Supreme Court of Florida on the general subject: Hardee v. Brown, 56 Fla. 377, 47 So. 834; Cason v. Quinby, 60 Fla. 35, 53 So. 741; Ferguson v. McDonald, 66 Fla. 494, 63 So. 915; Wilk v. City of Bartow, 86 Fla. 186, 97 So. 307; Myers v. City of Miami, 100 Fla. 1537, 131 So. 375; Blalock v. Powledge, 131 Fla. 498, 179 So. 772; Lee v. Hector Supply Co., 133 Fla. 849, 183 So. 489.

tion to the effect of the statute on this particular class of brokers, that is, those who send orders to principals in and out of the State, and did not consider that part of the ruling of the Supreme Court of Georgia which had held the license unconstitutional as to those brokers restricting their transactions to dealers domiciled in foreign states. The decision is of special significance to us, however, because it does convince us that a brokerage business identical with the one conducted by the appellant comes within the purview of the constitutional inhibition commonly referred to as the commerce clause.

The same day the Georgia court released the opinion in J. E. Raley & Bros. v. Richardson, supra, they filed also the decision in Crump v. McCord, 154 Ga. 147, 113 S.E. 534, which fully supports the position taken by the appellant in this case. See also 33 Am. Jur., Licenses, page 351. Counsel for appellees concedes that the ruling by the chancellor was inharmonious with the decision in the latter case, but he contends that such is not the weight of authority.

Bearing in mind the status of the litigation when it reached us, namely, that it had been alleged and proved, and found by the chancellor, that all dealings by the appellant were conducted with manufacturers or jobbers without the State of Florida, and recalling also recognition by the Supreme Court of the United States that occupation licenses of businesses such as the one conducted by the appellant might be precluded by the commerce clause, we cannot conclude that the ruling in the case of Crump v. McCord, supra, is in discord with the expressions of the Supreme Court of the United States on the subject. Mr. Justice BRANDEIS in the case of Sprout v. City of South Bend, 277 U. S. 163, 72 L. Ed. 833, 48 Sup. Ct. 502, 504, 62 A.L.R. 45, expressed the general rule as follows: "A state may, by appropriate legislation, require payment of an occupation tax from one engaged in both intrastate and interstate commerce." In support of this pronouncement he cited, J. E. Raley & Bros. v. Richardson, supra, and, incidentally, a case from this Court, Osborne v. Florida, 164 U. S. 650, 41 L. Ed. 586, 17 Sup. Ct. Rep. 214, which is also reported in 14 So. 588 and 33 Fla. 162.

L.R.A. 120, 39 Am. St. Rep. 99. Then he stated the exception: "But in order that the fee or tax shall be valid, it must appear that it is imposed solely on account of the intrastate business; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the imposition; and that the person taxed could discontinue the intrastate business without withdrawing also from the interstate business. Further cases relative to the point may be found in the opinion and in 33 Am. Jur., Licenses, page 351.

Mr. Justice BUTLER, of the Supreme Court of the United States, in East Ohio Gas Company v. Tax Commission of Ohio, 283 U.S. 465, 75 L. Ed. 1171, 51 Sup. Ct. 499, was quite definite in stating the rule: "It is elementary that a state can neither lay a tax on the act of engaging in interstate commerce nor on gross receipts therefrom." He continued, "And, while a state may require payment of an occupation tax by one engaged in both intrastate and interstate commerce, the exaction in order to be valid must be imposed solely on account of the intrastate business . . . and it must appear that one engaged exclusively in interstate business would not be subject to the imposition and that the taxpayer could discontinue the intrastate business without withdrawing also from the interstate business."

The writer of this opinion cannot repel the temptation to state that in his personal opinion injustice may be caused by the rule that imposition of a license upon the appellant and those similarly situated would tend to work injustice, and that he has the inclination, sympathetic with the ruling of the chancellor, to follow the case of State v. Stein, 240 Ala. 324, 199 So. 13, but it is prohibited from doing so out of deference to late decisions of the Supreme Court of the United States, some of which have been cited. Unfairness of the rule is suggested because two brokers, one falling in one class and one falling in the other, as described in J. E. Raley & Bros. v. Richardson, supra, and engaged in the same business, may not be required to pay the same license tax. The one dealing exclusively with out-of-state persons escapes the tax, while the one dealing wholly with principals within the state or with

some principals within and some without the state is forced to pay it. Thus there could occur a discrimination against the latter to prevent a discrimination against the former.

This introduces the history of the decisions of the Supreme Court of the United States, which it is thought may not have been duly considered by the Supreme Court of Alabama in State v. Stein, supra. A point of fact and another of law in the reported decision in that case become quite prominent in analyses of the current as distinct from the past decisions. For instance, it was stressed that in the case of Graybar Electric Company v. Curry, 238 Ala. 116, 189 So. 186, the same court had held a company taxable which had ordered "equipment direct from out-of-state manufacturers, who shipped the goods direct to the customer within the state," [240 Ala. 324, 199 So. 14] payment being made by the customer, not the shipper, but to the broker. More important, principal authority for the decision in State v. Stein, supra, was Hinson v. Lott, 19 L. Ed. 387, 8 Wall. 148, 75 U. S. 148, where Mr. Justice MILLER, writing for the Supreme Court of the United States, expressed the law as we think it now should be: " 'As the effect of the act is such as we have described, and it institutes no legislation which discriminates against the products of sister States, but merely subjects them to the same rate of taxation which similar articles pay that are manufactured within the State, we do not see in it an attempt to regulate commerce, but an appropriate and legitimate exercise of the taxing power of the States'." So the Supreme Court of Alabama in 1940 quoted language which the Supreme Court of the United States employed in 1869.

Difficulty arises in following the former court because between those years there seems to have been considerable expansion by the latter court of the basis for determining whether taxation imposed by states offended against the commerce clause. Evidently when the opinion was written in Hinson v. Lott, supra, such a burden could be imposed so long as there was no discrimination in favor of the products of a state against the products of sister states. Applied to this case such a construction would result in a holding that appellant could not complain of the license tax required of

him if an identical tax were collected from a competitor having his orders filled by firms within the State.

We have spoken of the change in the bases of interpretations of the commerce clause. Evidently this occurred between 1872, when the opinion was written in Osborne v. Mobile, 21 L. Ed. 470, 16 Wall. 479, 83 U. S. 479, and 1888, when the opinion was written in Leloup v. Mobile, 32 L. Ed. 311, 127 U. S. 640, 8 S. Ct. 1380, 1383. Although the facts in those cases were unlike the ones here, nevertheless the principle announced is of utmost importance in determining the present controversy. In the latter case the court, with admirable candor, observed that in the preceding fifteen years it had often felt it necessary to re-examine "the commercial power of Congress" and sometimes "to modify in some degree certain dicta and decisions that have occasionally been made in the intervening period." Then came the significant statement: "In our opinion such a construction of the Constitution leads to the conclusion that no State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, and the reason is that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress." Thus the criterion for the determination of the validity of a license became a matter of regulation as well as one of discrimination.

Summarizing, then, it appears from the record that it was alleged, proved, and found that the appellant solicited orders within this State which were forwarded only to principals located without the State. In the case originally cited the Supreme Court of the United States obviously considered a business of the kind followed by appellant as being within the sphere of operation of the commerce clause. Had appellant occasionally sent the orders of his customers to manufacturers within the State he could not have avoided payment of the occupational license tax, but, having restricted his dealings to corporations outside the limits of the State, he engaged exclusively in interstate commerce and under late decisions of the Supreme Court of the United States the pay-

ment of the license tax would constitute "a burden on that commerce" hence "a regulation of it, which belongs solely to Congress." Leloup v. Mobile, supra.

Accordingly the decree is reversed.

TERRELL, ADAMS and SEBRING, JJ., concur.

BUFORD, C. J., BROWN and CHAPMAN, JJ., dissent.

ON PETITION FOR REHEARING

CHAPMAN, J.:

The appellant, plaintiff below, is shown to be a citizen and resident of the State of Florida, and maintains an office at Miami and sells goods, wares and merchandise by sample to jobbers at points south of Fort Pierce to Miami. The admitted manner of transacting the business is that the buyer examines the sample, or samples, exhibited to him by the appellant and places an order with the appellant, who, in turn, transmits the same to a non-resident manufacturer, who receives the same, approves the order, or disapproves the same, and, if approved, fills the order and ships the goods directly through interstate commerce to the buyer in Florida, from whom the order, or orders, were taken. It was the view of the Tax Collector of Dade County that the plaintiff below should pay a brokerage license tax, for the purpose of transacting a brokerage business in Florida, as provided for by Section 205.59, Fla. Stats. 1941 (F.S.A.), being Section 5 of Chapter 18011, Acts of 1937, Laws of Florida. The appellant, plaintiff below, was of the view that the brokerage license tax demanded was a burden on interstate commerce. The lower court held against this contention, and plaintiff appealed.

The question presented here for adjudication is whether Section 5 of Chapter 18011, supra, being Section 205.59 Fla. Stats. 1941 (F.S.A.), as applied to appellant, infringes on the commerce clause of the Federal Constitution. Article I, Section 8, grants Congress the power to regulate commerce with foreign nations and among the several States. The constitutionality of Section 5 of Chapter 18011, supra, was sustained by this Court against numerous grounds of attack.

See Florida Sugar Distributors, Inc. v. Wood, 135 Fla. 126, 184 So. 641, where we, in part, said (text page 135 Fla. 135) ;

". . . The Legislature certainly has the right to apply different licenses or privilege taxes upon two such radically different businesses as the wholesale business and the retail business. Furthermore, the rule is well settled that where two or more interpretations can reasonably be given to a statute, the one that will sustain its validity should be given and not one that will render it unconstitutional, or defeat its purpose." See State ex rel. Beth v. Burnett, 141 Fla. 870, 194 So. 277.

The Act provides that every person engaged in the business of trading, buying, bartering, serving or selling tangible personal property as owner, agent, broker, or otherwise, shall pay a license tax of $10.00, which shall entitle him to maintain one place of business (stationary or moveable) and shall pay $10.00 for each additional place of business. . . . It is conceded that the appellant is engaged in business as a broker and represents non resident clients or customers. It is settled that the Legislature has the power to provide for a tax on licenses. See Section 5 of Article XIV of the Florida Constitution. An excise tax partakes of the nature of a license tax. An excise tax is laid on a license to pursue certain occupations, corporate privileges, sales or consumption of commodities. See Amos v. Gunn, 84 Fla. 285, 94 So. 615. The tax here involved is directed against the occupation of a broker and not the non resident clients or customers of the broker. Numerous persons, firms and corporations residing in the State of Florida pay occupational license taxes. The appellant here is a potential competitor of these several firms paying taxes to support the costs of government of the State of Florida.

The recent case of Sanford v. City of Clanton, 244 Ala. 671, 15 So. (2nd) 303, involved an ordinance of the city imposing a license fee of $25.00 per year, $10.00 per week, or $2.00 per day on all persons delivering merchandise in the City of Clanton from all points without the said City. Sanford was a wholesale dealer of fuel oil, with offices at DeFuniak Springs, Florida. Orders came to Sanford at DeFuniak

from customers residing in Clanton. It was the fuel oil dealer's contention that the ordinance was a burden on interstate commerce. The Supreme Court of Alabama, in sustaining the ordinance, in part, said: "the taxing power of a state is not to be regarded as having been exercised in an unconstitutional manner where the levy is non discriminatory in character, does not materially impede the commerce, and not subject to local levies in some other sovereignty . . . not all state taxation is to be condemned because it in some manner affects commerce between the States."

The case of Dunston v. City of Norfolk, 177 Va. 689, 15 S.E. (2nd) 86, involved an ordinance imposing a license tax for the privilege of doing business in the City of Norfolk. The appellant had an office in Norfolk and was the local representative of the International Tailoring Company, with offices in Chicago and New York. Samples of cloth were exhibited to prospective customers at the agent's office in Norfolk. Orders were taken there and transmitted to either Chicago or New York, where the suits were made and sent by interstate commerce to the customers at Norfolk. The defendant Dunston contended that he was engaged in interstate commerce and the ordinance of the City of Norfolk requiring him to pay an occupational license tax, in its application to him, was unconstitutional.

The Supreme Court of Appeals of Virginia, in sustaining the ordinance, in part, said (text 15 S.E. (2nd) 90-91):

"A statute is always presumed to be valid and is not to be declared void unless its nullity and invalidity appear beyond reasonable doubt. Doubts are always resolved in favor of its constitutionality. Cooley, Const. Lim., 7th Ed., page 252, et seq., and cases cited.

"It does not appear to us that the tax ordinance of the city of Norfolk effects any discrimination, actual or potential, against interstate commerce, or adds any burden thereto in the nature of a regulation contrary to the commerce clause. There is no magic in the name by which the tax may be described. It is the effect of its operation that is important. The possibilities of the consequences prohibited by the Constitution are absent.

"For the foregoing reasons, we are of the opinion that the provisions of the ordinance of the city of Norfolk do not infringe the purpose of the commerce clause. The purpose of that clause is to secure and preserve equality for national commerce, unfettered by regional legislation."

The early case of Ficklen v. Shelby County Taxing Dist., 145 U. S. 1, 12 S. Ct. 810, 36 L. Ed. 601, involved a license tax on merchant brokers imposed by the Legislature of the State of Tennessee. The merchandise brokers for the year 1887 paid $50.00 for a license to do a general and unrestricted business as merchant brokers. Their customers and clients for the year 1887 were largely non residents. It was contended that the involved license tax was a burden on interstate commerce. The Court held that if the imposed license tax affected interstate commerce in any way, it did so incidentally and so remotely as not to amount to a regulation of commerce. The Court, in sustaining the tax, in part, said (text 145 U. S. 21):

"No doubt can be entertained of the right of a state legislature to tax trades, professions and occupations, in the absence of inhibition in the state constitution in that regard; and where a resident citizen engages in general business subject to a particular tax the fact that the business done chances to consist, for the time being, wholly or partially in negotiating sales between resident and non-resident merchants, of goods situated in another state, does not necessarily involve the taxation of interstate commerce, forbidden by the Constitution."

In the case of United States Express Co. v. Minnesota, 223 U. S. 335, 32 S. Ct. 211, 56 L. Ed. 459, the Court said:

"The right of the State to tax property, although it is used in interstate commerce, is thoroughly well settled. Postal Telegraph Co. v. Adams, 155 U. S. 688; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18; Ficklen v. Shelby County, 145 U. S. 1, 22. The difficulty has been, and is, to distinguish between legitimate attempts to exert the taxing power of the State and those laws which, though in the guise of taxation, impose real burdens upon interstate commerce as such. . . ."

The case of United States Fidelity Co. v. Kentucky, 231 U. S. 394, 34 S. Ct. 122, 58 L. Ed. 283, involved an occupational license tax similar to the case at bar. The agent contended that the Act requiring the payment of a license in its application to him was a burden on interstate commerce. That he was an agent of merchants engaged in interstate commerce and the State of Kentucky was precluded from imposing on him the license tax. The tax was sustained despite the contention that it was a burden on interstate commerce. The Court, in part, said: "The tax in question is an excise or privilege tax and undoubtedly within the power of the State, unless it has the effect of *directly burdening* interstate commerce. . . . In the case of commercial agencies, the thing that is laid hold of as the subject of the excise is a business carried on within the State. . . . To warrant interference with the exercise of the taxing power of the State on the ground that it obstructs or hampers interstate commerce, it must appear that the burden is direct and substantial." (Emphasis supplied).

In the case of Blumenstock Bros. v. Curtis Pub. Co., 252 U. S. 436, 40 S. Ct. 385, 64 L. Ed. 649, the Court, in part, said.

". . . We held in Hopkins v. United States, 171 U. S. 579, that the buying and selling of livestock in the stockyards of a city by members of the stock exchange was not interstate commerce, although most of the livestock was sent from other states. In Williams v. Fears, 179 U. S. 270, we held that labor agents engaged within the State of Georgia in hiring persons to be employed outside the State were not engaged in interstate commerce. In Ware & Leland v. Mobile County, 209 U. S. 405, we held that brokers taking orders and transmitting them to other states for the purchase and sale of grain or cotton upon speculation were not engaged in interstate commerce; that such contracts for sale or purchase did not necessarily result in any movement of commodities in interstate traffic, and the contracts were not, therefore, the subjects of interstate commerce. In the recent case of United States Fidelity & Guaranty Co. v. Kentucky, 231 U. S. 394, we held that a tax upon a corporation engaged in the business

of inquiring into and reporting upon the credit and standing of persons in the State, was not unconstitutional as a burden upon interstate commerce as applied to a non-resident engaged in selecting and distributing a list of guaranteed attorneys in the United States, and having a representative in the State. The contention in that case, which this Court denied, was that the service rendered through the representatives in Kentucky, and other representatives of the same kind acting as agents of merchants engaged in interstate commerce, to furnish them with information through the mails, or by telegraph, or telephone, as a result of which merchandise might be transported in interstate commerce, or withheld from such transportation, according to the character of the information reported, was so connected with interstate commerce as to preclude the State of Kentucky from imposing a privilege tax upon such business."

In the case of Pacific Telephone & Tel. Co. v. Tax Commission, 297 U. S. 403, 56 S. Ct. 179, 80 L. Ed. 760, the Court, in part, said:

". . . Taxes for the privilege of doing local business measured by the gross income of such business have frequently been laid upon concerns engaged in both intrastate and interstate business; and have, for half a century, been sustained without enquiry whether withdrawal from the local business would compel discontinuance of the interstate. That an occupation tax upon a foreign telegraph company measured by earnings from its local business is valid, was indicated as early as Telegraph Co. v. Texas, 105 U. S. 460, 464-465; and was definitely held in Ratterman v. Western Union Telegraph Co., 127 U. S. 411, which has been repeatedly cited with approval in cases involving interstate railroads and telegraph companies. Similarly, in Southern Ry. Co. v. Watts, 260 U. S. 519, 529-530, a so-called franchise tax for the privilege of doing intrastate business, measured by a percentage of the value of property subject also to an *ad valorem* tax, was sustained as against both foreign and domestic railroads." . . .

". . . It is true that in Sprout v. South Bend, 277 U. S. 163, 171, the Court, when reciting the essentials of a valid license fee for doing local business, said that it must appear 'that the

person taxed could discontinue the intrastate business without withdrawing also from the interstate.' But that statement was made in discussing the validity of a flat bus license fee, prescribed by an ordinance which made no distinction between buses engaged exclusively in interstate commerce, those engaged in both classes of commerce; and it must be read in that context. The license fee was held void, because Sprout, who was engaged in both classes of commerce, could not escape payment of the tax by confining himself to interstate business. The cases cited by the Court in that connection were of the same character."

The case of Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 58 S. Ct. 45, 82 L. Ed. 823, involved a tax asserted to be a burden on interstate commerce. This case alone is abundant authority for the affirmance of the decree of the chancellor below. The Court, in part, said:

"It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate business must pay its way,' Postal Telegraph-Cable Co. v. Richmond, 249 U. S. 252, 259; Ficklen v. Shelby County Taxing Dist., 145 U. S. 1, 24; Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 696; Galveston H. & S. A. Ry Co. v. Texas. 210 U. S. 217, 225, 227, and the bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business. . . .

". . . Taxation measured by gross receipts from interstate commerce has been sustained when fairly apportioned to the commerce carried on within the taxing state, Wisconsin & M. Ry. Co. v. Powers, 191 U.S. 379; Maine v. Grand Trunk Ry. Co., supra. (142 U. S. 217); Cudahy Packing Co. v. Minnesota, supra (246 U. S. 450); United States Express Co. v. Minesota, 223 U. S. 335, and in other cases has been rejected only because the apportionment was found to be inadequate or unfair. . . .

"In the present case the tax is, in form and substance, an excise conditioned on the carrying on of a local business, that of providing and selling advertising space in a published

journal, which is sold to and paid for by subscribers, some of whom receive it in interstate commerce. The price at which the advertising is sold is made the measure of the tax. This Court has sustained a similar tax said to be on the privilege of manufacturing, measured by the total gross receipts from sales of the manufactured goods both intrastate and interstate. . . .

"As we have said, the carrying on of a local business may be made the condition of state taxation, if it is distinct from interstate commerce, and the business of preparing, printing and publishing magazine advertising is peculiarly local and distinct from its circulation whether or not that circulation be interstate commerce."

The case of McGoldrick v. Berwind-White Co., 309 U. S. 33, S. Ct. 60, 84 L. Ed. 565, involved a sales tax imposed by the City of New York on the purchases of coal delivered to the purchaser's plant or steamboat. The coal was taken from mines situated in Pennsylvania. The Pennsylvania coal miners maintained an office in New York City. Customers residing in New York City signed contracts in New York City to be filled and shipped by interstate commerce and delivered in New York City to the customers according to the contract. It was contended that the sales tax on the deliveries of coal was a burden on interstate commerce.

The Court, in a divided opinion, sustained the tax and, in part, said (text 309 U. S. 49-50) :

"If, as guides to decision, we look to the purpose of the commerce clause to protect interstate commerce from discriminatory or destructive state action, and at the same time to the purpose of the state taxing power under which interstate commerce admittedly must bear its fair share of state tax burdens, and to the necessity of judicial reconciliation of these competing demands, we can find no adequate grounds for saying that the present tax is a regulation which, in the absence of congressional action, the commerce clause forbids. This Court has uniformly sustained a tax imposed by the state of the buyer upon a sale of goods, in several instances in the 'original package,' effected by delivery to the purchaser upon arrival at destination after an interstate journey, both

when the local seller has purchased the goods extra-state for the purpose of resale, Woodruff v. Parham, supra (8 Wall. 123, 131); Hinson v. Lott, 8 Wall. 148; Banker Bros. v. Pennsylvania; supra, (222 U.S. 210); Wiloil Corp. v. Pennsylvania, supra, (294 U.S. 169): Graybar Electric Co. v. Curry, 308 U. S. 513, 238 Ala. 116; 189 So. 186, and when the extra-state seller has shipped them into the taxing state for sale there. Hinson v. Lott, supra (8 Wall. 148); Sonneborn Bros. v. Cureton, 262 U. S. 506. It has likewise sustained a fixed-sum license tax imposed on the agent of the interstate seller for the privilege of selling merchandise brought into the taxing state for the purpose of sale. Howe Machine Co. v. Gage, 100 U.S. 676; Emert v. Missouri, 156 U. S. 296; Kehrer v. Stewart, 197 U. S. 60; Baccus v. Louisiana, 232 U. S. 334; Wagner v. Covington, 251 U. S. 95. See International Harvester Co. v. Department of Treasury of Indiana, 321 U. S. ----- (opinion filed May 15, 1944); General Trading Co. v. State Tax Commission, 321 U. S. -----, (opinion filed May 15, 1944); McLeod v. J. E. Dilworth Co., 321 U. S. ----- (opinion filed May 15, 1944).

Emphasis has been placed on rulings in the cases of Crump v. McCord, 150 Ga. 147, 113 S.E. 534; Walton v. Augusta, 104 Ga. 757, 30 S. E. 964; Raley & Bros. v. Richardson. 264 U. S. 157, 68 L. Ed. 615, 44 S. Ct. 256; Sprout v. City of South Bend, 277 U. S. 163, 73 L. Ed. 833, 48 S. Ct. 502; East Ohio Gas Co. v. Tax Commission, 283, U. S. 465, 75 L. Ed. 1171, 51 S. Ct. 499. An analytical study of the cited cases fail to establish their applicability to the point in controversy.

The bill of complaint alleges that the plaintiff below was an agent engaged in interstate commerce; that he sold merchandise by sample, accepted written orders, transmitted the same to nonresident manufacturers where the orders were filled, and merchandise shipped to the customers in Florida by interstate commerce. "That plaintiff's business is that strictly of an agent operating under the commerce clause of the Federal Constitution and as such agent operates under the commerce clause of the Federal Constitution; he is exempt from any and all license taxes or fees." The evidence offered by the plaintiff to support the allegations, *supra,* is wholly

insufficient. It is clear that he is a broker as defined by Section 5 of Chapter 18011, *supra*. The business transacted by the plaintiff as a broker or agent for his non-resident clients or customers does not burden interstate commerce. He simply failed to carry the burden of proof in conformity with the allegations of the bill of complaint and the chancellor correctly dismissed his bill of complaint on final hearing.

The petition for a rehearing should be granted and the decree of the lower court affirmed.

So ordered.

BUFORD, C. J., BROWN and ADAMS, JJ., concur.

TERRELL, THOMAS and SEBRING, JJ., adhere to original opinion.